IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARROLL RIPLEY, JR. and    :            CIVIL ACTION
CAROLYN RIPLEY              :
                           :
        v.                 :
                           :
BRETHREN MUTUAL INSURANCE CO. :          NO. 14-4763

MEMORANDUM

Dalzell, J.                                    November 25, 2014

In the summer of 2012, Michael Ripley and two acquaintances stole antiques worth more than $50,000 from his grandparents Carroll Ripley, Jr. and Carolyn Ripley's house.  At issue is whether Michael was at that time a member of his grandparents' household, which would trigger a policy exclusion in their insurance policy precluding recovery from defendant Brethren Mutual Insurance Co. ("Brethren Mutual") for the theft.

Before us are plaintiffs' motion for partial summary judgment seeking a judicial declaration that Michael Ripley was not an "insured" for purposes of the policy exclusion and Brethren Mutual's motion for summary judgment.  For the reasons set forth below, we will grant plaintiffs' motion and deny Brethren Mutual's motion.

I.    **Factual And Procedural Background**

The undisputed facts are that on May 12, 2012 Brethren Mutual issued Farm Policy No. F880010255 05 to Carroll Ripley, Jr. and Carolyn Ripley (collectively, "the Ripleys") to cover their residence in Ivyland, Pennsylvania, which includes a 15½-room house, a six-room carriage house, and four horse barns (one of which is attached to a horse-riding arena) on a thirty-acre working horse farm. Pl. SOF at ¶¶ 6, 7.  On July 30, 2012 a theft of personal property -- antiques

Carolyn Ripley had collected -- occurred at the residence.  Def. SOF at ¶ 4; Pl. SOF at ¶ 9.  The

plaintiffs filed a claim to recover under their insurance policy, Def. SOF at ¶ 4, and Brethren

Mutual hired Michael H. McIntyre of MHM Risk Management, Inc. to investigate and evaluate

the claim.  Id. at ¶ 5.  McIntyre visited the premises on August 16, 2012.  Id. at ¶ 6.  During the

inspection, Carolyn Ripley advised McIntyre that her grandson lived on the premises and had

admitted his involvement in the theft to her.  Id. at ¶¶ 7, 8; Pl. SOF at ¶ 24.

On August 21, 2012, McIntyre issued a letter on behalf of Brethren Mutual denying

coverage by reference to a policy provision that stated:

> We will not pay for loss or damage arising out of any act an
> "insured" commits or conspires to commit with the intent to cause
> a loss.
>
> In the event of such a loss, no "insured" is entitled to coverage,
> even "insureds" who did not commit or conspire to commit the act
> causing the loss.

Def. SOF at ¶ 12; Pl. SOF at ¶ 25 and Ex. E.

The policy defines "insured" as follows:

> "Insured" means you and, If you are an individual, the following
> members of your household:
> a.   Your relatives;. . . .

Pl. SOF, Ex D. at 6; see also Def. SOF at ¶ 13.

Plaintiffs offer the following additional facts.  Michael Ripley, then 22 years old, lived at

the Ripley residence as a boarder since December of 2009.  Pl. SOF ¶¶ 11, 14.  He paid a

reduced rent of $25 per week and bartered work by caring for the horses in exchange for a room,

as his mother had done between 1993 and 1996.  Id.  at ¶¶ 15, 16.  Michael Ripley did not sign a

Room Rental Agreement, as the Ripleys require other boarders to do, nor did he pay the security

deposit they required of other boarders because (1) he was familiar with the house rules and did

not need to sign an acknowledgment thereto; (2) he intended to stay longer than the minimum twelve-week stay the Ripleys otherwise required; (3) he was already known to his grandparents; and (4) his arrangement provided for barter for services.  Id. at ¶¶ 17, 18.

The plaintiffs further state that from the time he moved in until he was evicted on August 2, 2012, id. at Ex. C ¶ 24, Michael Ripley provided his own food and ate his meals separately from the Ripleys.  Id. at ¶ 20.  He had access to the residence's appliances and the kitchen as other boarders did, but did not have permission to otherwise use any of the Ripleys' other property -- such as their car.  Id.  He did not have access to the living or dining rooms, his grandmother's office, or any bedroom but his own.  Id.  He paid for his cell phone and health insurance, and when he could not afford health insurance, he went without.  He was not covered under the Ripleys' health insurance plan.  Id.; see also Ex. C.  Michael, like other boarders, was not permitted to bring anyone into the Ripley residence.  Id., Ex. C at ¶ 22.

After he lost a part-time job in the summer of 2012 and ceased working reliably on the farm, the plaintiffs state that his grandmother gave him three weeks' notice to leave. Id. at ¶ 21. Carolyn Ripley discovered the theft of antique objects and furniture when she returned home on August 1, 2012.  Id. at ¶ 23.  Michael confessed to her that he participated in the theft by letting two men into the house in her absence.  Id.  She evicted him the following day.  Id.

For its part, defendant Brethren Mutual offers the following additional facts.  The insurer states that Carolyn Ripley never advised investigator McIntyre while they were inspecting the premises together that her grandson was a boarder or tenant. Def. SOF at ¶ 15.  Brethren Mutual points to Carolyn Ripley's repeated references to her familial relationship to Michael.  For example, in a handwritten letter supplementing her police report, she stated "Michael thinks of me as his mother, because I raised him."  Id. at ¶ 16.  Brethren Mutual also relies on another

handwritten letter to the detective, in which she recounted that upon first discovering the theft, she was

> sobbing, saying to Michael with [a friend] present, 'I've given you
> my life. I paid all your fines. I kept you from getting two felonies. I
> lived for you. No one in the world has ever meant as much to me
> as you.  I would have died for you!'

Id. at ¶ 17, see also Def. SOF, Ex. C.

On July 9, 2014, the Ripleys filed suit in the Court of Common Pleas of Philadelphia County for breach of contract and bad faith.  Their complaint alleges more than $50,000 in damages from the theft[1] and also seeks interest, attorney's fees and punitive damages under the Pennsylvania Bad Faith statute, 42 Pa. C.S.A. § 8371.  On August 14, 2014, Brethren Mutual removed to this Court.  Thereafter, the parties filed the instant motions.

## II.   **Legal Standard**

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party moving for summary judgment bears the burden of proving no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986).   To that end, the movant must inform the district court of the basis for its argument by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Where the movant is the defendant or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case," National State Bank v. Federal

---

[1] The brief in support of their motion for summary judgment claims that more than $70,000 was stolen.  Pl. Br. at 1.

Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992).  The movant need only point to the lack of evidence supporting the non-movant's claim.  Id.

It is well-established that Rule 56 obliges the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324; see also Fed. R. Civ. P. 56(c).  The nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006).   A factual dispute is "genuine" if it turns on "evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Id. at 248.  That is, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment.  Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 248).

> [T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

When both parties move for summary judgment, our task is no different.  As our Court of Appeals has cautioned,

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

Rains v. Cascade Industries, Inc., 402 F.2d 241, 245 (3d Cir. 1968). Cross-motions must be considered separately and should not be interpreted necessarily to mean that judgment should be entered on either one of them. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. 10A Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure, §2720 (3d ed. 2014). As in any summary judgment motion, the determination of whether a genuine issue concerning a material fact exists is itself a question of law that the Court must decide. It does not depend upon what either or both of the parties may have thought about the matter. A party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of his own motion. Id. As Wright and Miller observe, "It follows that the legal theories the movant advances in support of a Rule 56 motion and the assertion that there is no issue of material fact may not be used against the movant when the court rules on his adversary's motion." Id.

Because we consider cross-motions before us, "[t]he fact that one party fails to satisfy that burden on his own Rule 56 motion does not automatically indicate that the opposing party has satisfied his burden and should be granted summary judgment on the other motion." 10A Wright & Miller at §2720. Both motions must be denied if we find there is a genuine issue of material fact, but if there is no genuine issue, and one or the other party is entitled to prevail as a matter of law, the court may render judgment. Id.

If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  See Celotex, 477 U.S. at 322.  Specifically, Rule 56(e) provides in relevant part that "[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

## III.   **Applicable Law**

It is undisputed that Pennsylvania law governs this insurance dispute.  Under Pennsylvania law it is well-established that the interpretation of an insurance policy is a matter of law that may be properly resolved at summary judgment.  Nationwide Mut. Ins. Co. v. Nixon, 682 A.2d 1310, 1313 (Pa.Super. 1996).  The court may resolve via summary judgment whether a claim is within a policy's coverage or barred by an exclusion, provided that the policy's terms are clear and unambiguous so as to preclude any issue of material fact.  Butterfield v. Giuntoli, 670 A.2d 646, 651 (Pa. Super. 1995).  As a general rule, when the insurer relies on a policy exclusion to deny coverage, "the insurer has asserted an affirmative defense, and accordingly, bears the burden of proving such defense."  McEwing v. Lititz Mut. Ins. Co., 77 A.3d 639, 646 (Pa. Super. 2013) (citations omitted).  "Moreover, exceptions to the general liability of the insurer are to be strictly construed against the insurance company."  Frisch v. State Farm Fire & Casualty Co., 275 A.2d 849, 851 (Pa. Super. 1971).   Thus, if denial of coverage is to be sustained here, the insurance company must affirmatively show that the exclusion applies to the present circumstances.  See Myrtil v. Hartford Fire Ins. Co., 510 F. Supp. 1198, 1201 (E.D.Pa. 1981) (Ditter, J.).

A contract is ambiguous when the contract language is indefinite and reasonably susceptible to more than one meaning.  Commonwealth v. Brozzetti, 684 A.2d 658, 663 (Pa. Cmwlth. 1996).  If we find that a provision of the insurance policy is ambiguous, we are to construe it in favor of the insured and against the insurer "to further the contract's primary purpose of indemnity."  OneBeacon America Inc. Co. v. Urban Outfitters, Inc., -- F. Supp. 2d --, 2014 WL 2011494 at *5 (E.D.Pa. May, 15, 2014) (citing Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006)).

Establishing who is a resident of a household is a fact-specific inquiry that may include (but is not limited to) consideration of (a) the intent of the parties, (b)  the amount of time spent in the residence, (c) the nature of the living arrangements, (d) the type of activities undertaken in the residence, and (e) the age and self-sufficiency of the person at issue.  9A Couch on Insurance, § 128:7 (3d ed. Nov. 2014).  For example, our sister court in Drake v. Donegal Mut. Ins. Co., 422 F. Supp. 272 (W.D.Pa. 1976) (Weber, J.), found that the plaintiff was not an "insured" under her daughter's similarly worded insurance policy because plaintiff paid rent and utility charges; she lived on a different floor with a separate outside entrance and street address; she did her own grocery shopping, cooking and housekeeping; and she did not have access to her daughter's apartment.  Id. at 273.  As Couch on Insurance explains, "No single factor is the sole or controlling test of whether a person is a resident of a household."  Couch, § 128:7.  As the treatise elaborates, "Residents of a 'household' is a phrase designative of a relationship where persons live together as a family and deal with each other in a close, intimate and informal relationship and not at arm's length."  Id. at §128:8.  The "mere fact" that the individual is a child (or grandchild) of the insured does not automatically make that individual a member of the insured's household.  Id.

It is well-established under Pennsylvania law that "bad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured," Frog, Switch & Mfg. Co. v. Travelers Inc. Co., 193 F.3d 742, 751 n. 9 (3d Cir. 1999).  To recover under a bad faith claim a plaintiff must show that the defendant (1) did not have a reasonable basis for denying benefits under the policy, and (2) knew or recklessly disregarded its lack of reasonable basis for denying the claim.  Keefe v. Prudential Property and Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000) (quoting Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1997)).  A plaintiff must prove bad faith by clear and convincing evidence.  Id. (citing Cowden v. Aetna Cas. & Sur. Co., 134 A.2d 223, 229 (Pa. 1957).  Because success on the contract claim is not a prerequisite for a bad-faith claim, an insured's claim for relief under Section 8371 is "independent of the resolution of the underlying contract claim." March v. Paradise Mut. Ins. Co., 646 A.2d 1254, 1256 (Pa. Super. 1994).

**IV.**    **Discussion**

As a threshold matter, we have jurisdiction pursuant to 28 U.S.C. § 1332.  The Ripleys are Pennsylvania citizens and Brethren Mutual is a Maryland corporation with its principal place of business in Hagerstown, Maryland.  The Ripleys allege the requisite jurisdictional amount in controversy because their claims for breach of contract and bad faith are separate claims that are not alternative bases for recovery under state law, see Suber v. Chrysler Corp., 104 F.3d 578, 588 (3d Cir. 1997).  When punitive damages are recoverable, as they are here, they are properly considered in determining whether the claim reaches the jurisdictional threshold.  Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993).

A.    **Brethren Mutual's Motion For Summary Judgment**

We turn first to Brethren Mutual's motion for summary judgment.  As the insurer

invoking a policy exclusion, Brethren Mutual bears the burden of proving that Michael Ripley

was a member of his grandparents' household.

In support of its motion, the insurer states that it is undisputed that Michael Ripley

resided in the same house as the plaintiffs and that Carolyn Ripley failed to inform it or its

investigator that he resided there as a boarder or tenant (and she did not do so until after it

declined coverage).  Def. MSJ at 3.  Brethren Mutual also relies on Miller v. Poole, 45 A.3d

1143 (Pa. Super. 2012), where plaintiffs sought to recover under their neighbor's homeowners

policy for damage to their home by the neighbor's grandson's carelessness caused a fire, arguing

he was a resident of that household at that time and therefore an "insured" under a similarly

worded policy definition -- even though the neighbor had died prior to the incident.  Id. at 1146.

The Superior Court of Pennsylvania held that "under the unusual factual scenario presented" in

that case, the policy language was "reasonably susceptible to more than one interpretation," id. at

1147 -- that is, that the neighbor's relatives qualified as "insureds" whether they lived in the

same house with her or lived on the premises insured by her under the policy at issue.

Under this reading, Brethren Mutual argues, Michael Ripley was a member of his

grandparents' household because he lived in the same house, on premises they insured.  The

insurer stresses the "close familial relationship" between the Ripleys and their grandson.  Def.

MSJ at 4.  Finally, the insurer asserts that "there is no physical or documentary evidence to show

that the [p]laintiff's grandson, Michael Ripley, was anything other than a grandson, a close

relative, living with his grandparents in the same household."  Id.

As to the Ripleys' bad faith claim, Brethren Mutual states it had a reasonable basis for

denying coverage.  Id. at 6.

In opposition, the plaintiffs contend that Brethren Mutual has failed to carry its burden of proving the applicability of the policy exclusion.  They argue that the insurer's investigator failed to inquire into relevant facts -- such as Michael Ripley's age or living arrangements at the residence, Pl. Br. in Opp. at 3 -- and relied in error on Carolyn Ripley's expressed feelings for her grandson, id.  They cite to Carolyn Ripley's affidavit, in which she states, inter alia, that she told her grandson when he sought to reside on the farm that "he was going to have to pay his way (and work) to reside in the home, and abide by the rules just like all of her boarders" and that she had many different boarders at different times.  Id. at 4.

Plaintiffs also argue that Brethren Mutual's claim that it is entitled to summary judgment on the Ripleys' bad faith claim should be denied for several reasons.  They note that no discovery has been conducted and therefore the motion is premature, id. at 5, Brethren Mutual failed to conduct any inquiry concerning Michael Ripley's status, creating a "question of fact whether [the insurer] did not have a reasonable basis for denying benefits under the policy, and knew or recklessly disregarded its lack of reasonable basis in denying the claim", id. at 6, and, finally, they contend that a bad-faith claim is an independent cause of action that may be litigated irrespective of whether the policyholder is entitled to coverage.  Id.

We do not find dispositive Brethren Mutual's argument that its policy language is susceptible to alternative readings under which the policy exclusion would apply.  Rather, we find that plaintiffs have, through Carolyn Ripley's affidavit, cited specific facts about her grandson's living arrangements that show there is a genuine issue of fact for trial.  Despite the informality of the arrangement -- that is, the lack of a lease or any written agreement -- Carolyn Ripley's affidavit states many facts that depict a living arrangement that was not intimate, but

11

rather was at arm's length.  The significant facts include:  Michael Ripley paid for his room in cash and bartered work; he did not have access to significant parts of the house, including the living or dining rooms, his grandmother's office, or any bedroom but his own, and was not permitted to use his grandparents' car.  Michael provided his own food and ate his meals separately from the Ripleys.  When he could not afford health insurance, he did not join his grandparents' plan but went without coverage.  Like other boarders, he was not permitted to bring anyone into the Ripley residence.  Clearly, the "mere fact" of past emotional ties is insufficient to support Brethren Mutual's contention that Michael Ripley was a member of the Ripleys' household within the meaning of the insurance policy.  We find that by failing to dispute any of the material facts that related to the circumstances of Michael Ripley's arrangement, Brethren Mutual has failed to carry its burden of showing that the policy exclusion applies.

As to the bad faith claim, Brethren Mutual notably failed to provide any information that would tend to show Michael Ripley was, in fact, a member of the Ripley household (either through his deposition, another's affidavit, or other valid evidence).  The Ripleys have thus sufficiently raised a genuine issue of material fact as to whether Brethren Mutual had any basis -- let alone a reasonable one -- for concluding that the policy exclusion applied.

For these reasons, we will deny Brethren Mutual's motion for summary judgment.

### B.      The Ripleys' Motion For Partial Summary Judgment

The Ripleys argue that we should grant their motion because the contend Brethren Mutual cannot carry its burden of showing the policy exclusion applies, Pl. MSJ at 5, while they argue that they have put forward uncontested facts that support their contention that Michael Ripley was not a member of their household at the time of the theft and therefore not an insured

within the meaning of the policy, id. at 6.

The Ripleys rely on two recent cases, O'Neill v. GEICO Ins. Co., 2012 WL 3778172 (E.D.Pa. Aug. 30, 2012) (Bartle, J.), and Hugendubler v. State Farm Ins. Co., 2007 WL 2043045 (E.D.Pa. July 12, 2007) (Rufe, M.J.).  In O'Neill, a plaintiff injured in an auto accident sought a Declaration that she was an insured covered under her son's auto policy as a "household member" as they both resided in a large dwelling with a single address.  O'Neill, 2012 WL 3778172 at *1.  The uncontested facts showed that the residence was actually subdivided into a few separate apartments, requiring keys to access each apartment. Id.  The plaintiff had never paid rent to her son or entered into any leasing arrangement, had separate gas and utility bills, had her own telephone and cable service, and prepared her own meals but relied on her son to take her shopping, to church and to the doctor. Id. at *2.  Applying Pennsylvania law, Judge Bartle held that the essential inquiry is whether the family members operated as a single social unit and whether the claimant is "treated as one would expect a member of the household to be treated." Id. at *3 (quoting Nationwide Mut. Ins. Co. v. Budd-Baldwin, 947 F.2d 1098, 1102 (3d Cir. 1991)).  "The term 'household' does not include 'one who, though related and living in the same home, maintains a separate apartment therein and divides the expense of maintenance.' " Id. (quoting Donegal, 546 A.2d at 1216).  Judge Bartle concluded that the households in O'Neill did not "function as a single social unit," and that plaintiff therefore was not a household member eligible for coverage under her son's policy. Id. at *4; see also Hoff v. Hoff, 1 A.2d 506 (Pa. Super. 1938).

Similarly, the plaintiff in Hugendubler sought "resident-relative benefits" under auto policies held by her mother, brother and sister-in-law.  Hugendubler, 2007 WL 2043045 at *2. Judge Rufe, again relying on Donegal and Hoff, found that plaintiff and her relatives were not

part of the same household, in part because each family member resided in a separate apartment within a single family residence (although plaintiff and her mother shared a bathroom); each apartment had its own electric meter and its own entrance; and plaintiff's brother and sister-in-law paid their own utility and phone bills and maintained separate renters insurance.  Id. at *3.

Here, Carolyn Ripley swore in her affidavit that Michael Ripley paid a combination of cash and work in exchange for a room.  Her grandson's access to common space within the Ripley residence was limited to the kitchen, as it was for other boarders, Michael paid for his own health insurance, food and phone, and ate his meals apart.[2]

In opposition, Brethren Mutual states that it is undisputed that Carolyn Ripley believed her grandson conspired with the thieves and she shared with the insurer's investigator the handwritten notes prepared for the detective.  Def. Mem. in Opp. at 3.  The insurer also avers that "it is … undisputed that Michael Ripley resided in the same house with his grandparents."  Id.  The insurer insists that "[t]here is no contention that Michael Ripley resided in a separate section of the house," id., and it repeats that Carolyn Ripley never informed its investigator of the boarding or tenancy arrangement, it avers her "close familial relationship" with Michael supported by her statements in the documents she shared with the insurer.  Id. at 4, 5.

Rule 56 requires Brethren Mutual, as the nonmoving party, to go beyond the pleadings and by its affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial.  As the Supreme Court made clear in Celotex, if the nonmoving party fails to make a sufficient showing on an essential element on which it has the burden of proof, as Brethren Mutual does here, the moving

---

[2] Carolyn Ripley also reports that the Ripleys and Michael did not open each other's mail, but in her notes for the detective she stated that she had not "seen any [bank] notices for awhile" [sic], Def. Aff. in support, Ex. C pt. 2 at 13.  At the very least, this admission suggests some awareness of her grandson's financial status.

party is entitled to judgment as a matter of law.  <u>Celotex</u>, 477 U.S. at 322.  Brethren Mutual

offers only its investigator's affidavit -- which does not demonstrate the absence of a genuine

issue of material fact as to Michael Ripley's living arrangements.  Accordingly, we find that

Brethren Mutual has failed to demonstrate a genuine issue of material fact for trial.  We will

therefore grant plaintiffs' motion for partial summary judgment.

       An appropriate order follows.

BY THE COURT:


  <u>/s/ Stewart Dalzell, J.</u>
Stewart Dalzell, J.